UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN J. SELLORS,

Petitioner,

v.

DOUG VASBINDER,

Respondent.
____________________/

Civil Action No. 07-CV-11186

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER DENYING HABEAS CORPUS PETITION, GRANTING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner John J. Sellors has filed a *pro se* petition for a writ of habeas corpus challenging his convictions for conspiracy to deliver cocaine, delivery of cocaine, and possession of cocaine. He claims that there was insufficient evidence produced at trial to sustain his conviction for delivery of cocaine and that his admissions to the police following his arrest were involuntary. The court disagrees. Therefore, the habeas petition shall be denied.

## I. Background

Petitioner was charged with (1) conspiracy to deliver between 50 and 225 grams of cocaine, Mich. Comp. Laws §§ 750.157a and 333.7401(2)(a)(iii); (2) delivery of 50 to 225 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iii); and (3) possession of less than 25 grams of cocaine, Mich. Comp. Laws § 333.7403(2)(a)(iv). The prosecution's theory was that petitioner was involved in a drug conspiracy, which consisted of a chain of individuals who agreed to sell two ounces of cocaine. The evidence produced at trial established that, on August 31, 2000, Carl Harris

sold some cocaine to petitioner who sold two ounces of cocaine to Jerome Bolton who sold the cocaine to Randall Beninanti, a confidential police informant. Petitioner did not testify or present any witnesses at trial. The defense theory was that the conspiracy and delivery involved less than 50 grams cocaine. Defense counsel maintained that petitioner removed a few grams of cocaine from the amount that he received from Carl Harris before delivering the cocaine to Jerome Bolton, who substituted some filler for a few grams of cocaine before selling the mixture to Randall Beninati.

On February 7, 2002, an Oakland County Circuit Court jury found petitioner guilty, as charged. The trial court sentenced petitioner as a habitual offender to life imprisonment for the conspiracy and delivery convictions and to a term of one to fifteen years for the possession charge.

Petitioner raised his habeas claims in an appeal of right. The Michigan Court of Appeals affirmed his convictions in an unpublished decision. *See People v. Sellors*, No. 241761, 2003 WL 22514620 (Mich. Ct. App. Nov. 6, 2003). The Michigan Supreme Court denied leave to appeal. *See People v. Sellors*, 470 Mich. 859; 679 N.W.2d 700 (2004). Petitioner raised several new issues in a motion for relief from judgment, which the trial court denied because petitioner failed to show "cause" under MCR 6.508(D)(3) for not raising his claims on appeal and "actual prejudice" from the alleged irregularities. The Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal the trial court's decision. *See People v. Sellors*, No. 269396 (Mich. Ct. App. Oct. 11, 2006); *People v. Sellors*, 477 Mich. 981; 725 N.W.2d 342 (2007).

In the instant petition, Sellors argues that (1) there was insufficient evidence to sustain his conviction for delivery of 50 or more grams of cocaine and (2) the trial court erred by admitting in evidence his post-arrest statement to the police. Respondent argues these claims lack merit.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claim on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor

the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original). Furthermore, section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted).

## III. Discussion

### A. Sufficiency of the Evidence

Petitioner's first habeas claim challenges the sufficiency of the evidence supporting his conviction for delivery of cocaine. Petitioner contends that the prosecutor failed to prove that he delivered 50 or more grams of a substance containing cocaine. According to his reading of the trial testimony, petitioner removed some of the bagged cocaine before he delivered it to Jerome Bolton and Bolton substituted some filler for cocaine before delivering the mixture to the confidential informant. In addition, petitioner argues that the chemist failed to test the powder at the bottom of the bag to determine if it was part of the cocaine mixture. The Michigan Court of Appeals concluded that "there was sufficient evidence for a reasonable juror to conclude that the elements of delivery of between 50 and 225 grams were established beyond a reasonable doubt." *Sellors*, 2003 WL 22514620, at *5.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, the critical question on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16. In Michigan, the elements of unlawful delivery of cocaine between 50 and 225 grams are "(1) the defendant delivered a controlled substance, (2) the substance delivered was cocaine and the defendant knew it was cocaine, (3) the substance was in a mixture that weighed more than fifty grams but less than 225 grams, and (4) the defendant was not legally authorized to deliver the substance." *People v. Omer*, Nos. 220282 and 223320, 2000 WL 33414986, at *2 (Mich. Ct. App. Aug. 4, 2000).

In the present case the only element in dispute is the quantity of cocaine delivered. There was testimony at petitioner's trial that two ounces of cocaine is the equivalent of fifty-six grams. (Tr. Feb. 5, 2002, at 45-46.) Forensic chemist Ralph Sochocki established that 51.94 grams of cocaine were taken from the confidential informant after petitioner's drug delivery to Jerome Bolton and that 13.65 grams of cocaine were found on Bolton. (*Id*. at 48-49, 163, 167.) Sochocki admitted that he did not test the powder in the bag of cocaine. He examined only the largest rock in the bag and testified that the rocks by themselves, without the powder, probably weighed less than 50 grams. (*Id*. at 170-71, 173-74.)

Jerome Bolton testified that he received two bags of cocaine from petitioner in exchange for $2,400. Each bag contained one ounce of cocaine in rock form. He opened the two bags and put their contents into a third bag, which contained a filler or powder known as inositol. He chipped off some cocaine for himself and, at approximately the same time, petitioner reached in the bag and also removed some cocaine. Bolton did not know whether petitioner had removed some cocaine before delivering the two bags of cocaine to him. (Tr. Feb. 4, 2002, at 144, 153-59,

164; Tr. Feb. 5, 2002, at 15-16.)

Petitioner informed the police after his arrest that Jerome Bolton had asked him for some drugs. Petitioner then called Carl Harris, who informed him that he could get two ounces. Petitioner subsequently arranged to meet Harris and Bolton at Chi-Chi's Restaurant. Harris gave him the cocaine outside the restaurant. Petitioner then went inside Chi-Chi's and handed the cocaine to Bolton, who gave him the money. (Tr. Feb. 5, 2002, at 217-20.)

The jury could have inferred from petitioner's statement to the police and from Jerome Bolton's testimony that petitioner delivered two ounces of cocaine to Bolton before removing some cocaine from the bag for himself. What Bolton did with the cocaine after he received it from petitioner and whether Bolton actually delivered 50 or more grams of cocaine to the informant was irrelevant, because petitioner was charged with the delivery of cocaine to Bolton.

A rational juror could have concluded from the evidence taken in the light most favorable to the prosecution that petitioner delivered 50 or more grams of a substance containing cocaine to Jerome Bolton. Consequently, the state appellate court's conclusion that the evidence was sufficient to sustain petitioner's delivery conviction did not result in a decision that was contrary to, or an unreasonable application of, *Jackson*, and petitioner has no right to relief on the basis of his first claim.

**B. The Voluntariness of Petitioner's Confession**

Petitioner's second and final claim is that his statement to the police after his arrest was involuntary because it was induced by expectations of leniency.

The test for the voluntariness of a confession is whether "'the confession [was] the product of an essentially free and unconstrained choice by its maker[.] If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)). When determining whether a defendant's will was overborne in a particular case, courts assess

> the totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

*Id*. at 226 (citations omitted). Courts must "determine[] the factual circumstances surrounding the confession, assess[] the psychological impact on the accused, and evaluate[] the legal significance of how the accused reacted." *Id*.

To be free and voluntary, a confession "'must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.'" *Bram v. United States,* 168 U.S. 532, 542-43 (1897) (quoting 3 Russ. Crimes (6th Ed.) 478). A confession is not voluntary if an officer's promise of leniency was intended to induce admissions and if the admissions were conditioned on the defendant's belief that he would be released if he talked. *Williams v. Withrow*, 944 F.2d 284, 289 (6th Cir. 1991), *rev'd in part on other grounds,* 507 U.S. 680 (1993). "[W]hen promises of leniency, coupled with threats of immediate imprisonment, have a coercive effect on a suspect, [courts] are obliged to inquire

whether 'the "coercion" in question was sufficient to overbear the will of the accused.'" *Id*. (quoting *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1989)).

At a suppression hearing conducted in state court, police officer Martin Lavin testified that petitioner was taken into custody on August 31, 2000. They arrived at the police station about 11:00 p.m., and he interviewed petitioner at 11:50 p.m. He advised petitioner of his constitutional rights, and petitioner signed a written waiver of his rights. Petitioner was distraught at the beginning of the interview and there were intermittent occasions when he broke down and had to compose himself before continuing. However, petitioner was not intoxicated or under the influence of any controlled substance, he did not request food or medication, and no one threatened him or used physical force on him. The entire interview lasted about 45 minutes.

Officer Lavin also testified that he did not promise petitioner leniency in return for his statement. He did, however, tell petitioner that if he cooperated and anything materialized then he would speak with the prosecutor and the sentencing judge. This conversation occurred after he took petitioner's oral and written statements.

Officer Kenneth Bean testified that he took petitioner into custody on August 31, 2000. Petitioner was hysterical, hyperventilating, and begging to be let go. He said that his life was over, and he feared that he would never see his children again because this was his third arrest. Bean later witnessed Officer Lavin read petitioner's constitutional rights to him. By then, petitioner's demeanor had changed; he was focused and paying attention to what was happening. Petitioner initialed the rights and then signed the waiver-of-rights form.

Petitioner testified at the hearing that, as soon as he was arrested, officers began

telling him that the charges could be dropped if he cooperated. He had cooperated with the police in the past and was skeptical about the officers' remarks because there was no attorney present. He hoped that the officers would keep their word and that something would happen as a result of his cooperation.

The state court judge who presided over the hearing determined that there was a discussion about cooperation and leniency and that the conversation occurred before petitioner made his oral and written statements. The court opined, however, that petitioner, not the officers, initiated the conversation about cooperation because petitioner knew cooperation had served him well in the past and that his cooperation could be brought to the attention of the appropriate authorities. The court doubted that petitioner had relied on Officer Lavin's comments about cooperation or that petitioner had viewed the officer's comments as a promise. The court concluded that the conversations about cooperation did not induce petitioner's statements and that his confession was voluntary. The Michigan Court of Appeals agreed that petitioner's statement was voluntary.

The state courts' conclusions – that petitioner's oral and written statements were voluntary – are supported by the record. Petitioner was 40 years old at the time, had three prior drug convictions, and had been working as a car salesman. His interview with the police was not lengthy, and he was not deprived of food or sleep, nor mistreated by the police. Although he apparently was distraught at the beginning of the interview, he calmed down and became focused on what was happening.

Even if there was a promise of leniency, petitioner admitted at the evidentiary hearing that he had been leery of the officers' promises and that he was merely hoping some good would come of making a statement. He stated a couple of times that the officers had said the charges

"could" be dropped. He also acknowledged that it had been only a possibility that he would not be charged.

It does not appear that any promise of leniency in return for cooperation was sufficient to overcome petitioner's free will and render his admissions involuntary. Therefore, the state appellate court's decision was objectively reasonable. Petitioner is not entitled to habeas corpus relief on the basis of his second and final claim.

## IV. Conclusion

The state appellate court's rejection of petitioner's claims did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly,

IT IS ORDERED that the petition in this matter for writ of habeas corpus is denied. The Court nevertheless grants a certificate of appealability because reasonable jurists could disagree with the court's resolution of petitioner's constitutional claims or they could conclude that the issues are adequate to deserve encouragement to proceed further. *See Banks v. Dretke*, 540 U.S. 668, 705 (2004). Petitioner may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

S/Bernard A. Friedman__________________
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: September 9, 2009
Detroit, Michigan